**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-23430-KMM

GUERRY OLIBRUS,

      Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      Respondents.

_____/

## ORDER

THIS CAUSE came before the Court upon Petitioner Guerry Olibrus's *pro se* Petition for Writ of Habeas Corpus (the "Petition" or "Pet."). (ECF No. 1). The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to file a memorandum of fact and law to show cause why the Petition should not be granted. *See generally* (ECF No. 4). Respondents thereafter filed a Response to Order to Show Cause (the "Response" or "Resp."). (ECF No. 5). Petitioner did not file a reply, and the time to do so has passed. As set forth below, the Petition is GRANTED IN PART as to Petitioner's entitlement to a bond hearing. The Court makes no determination as to whether Petitioner is in fact entitled to be released following such a hearing.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner alleges that he is in the physical custody of Respondents at the Miami Federal Detention Center. Pet. at 1. Petitioner further alleges that he has been held for over six months without bond, despite not having a criminal conviction or other history that would properly subject him to mandatory detention, and that he had been living in the United States for fifteen years when he was detained. *Id.* at 2, 6. Petitioner asserts two Counts based on his mandatory detention: (1)

violation of the Immigration and Nationality Act ("INA") where he is detained without bond and his removal is not reasonably likely in the near future; and (2) violation of due process under the Fifth Amendment. *Id.* at 6. Petitioner thus asks the Court to order his immediate release from Respondents' custody or that he receives a bond hearing before an Immigration Judge. *Id.* at 7.

In the OTSC, the Court assumed jurisdiction over the Petition, ordered that Petitioner was not to be transferred out of this District until the instant proceedings are terminated, and ordered Respondents to file one consolidated memorandum of law and fact to show cause why the Petition should not be granted. *See* (ECF No. 4) at 2–3.

## II.    LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district:  the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

### a.  The Policy

The new policy underlying this action, "Interim Guidance Regarding Detention Authority

for Applicants for Admission" (the "Policy"), was announced by Respondent U.S. Immigration and Customs Enforcement ("ICE") and promulgated by Respondent U.S. Department of Homeland Security ("DHS") in coordination with the Department of Justice and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the APA. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including

the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases). Nevertheless, a distinct split has emerged since. *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both recently held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and

4

are therefore not entitled to release on bond.  *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination.  The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings.  *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

### b.  Administrative Exhaustion

As an initial matter, the Court agrees with Petitioner that administrative exhaustion would be futile.  Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile."  *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted).  This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA.  *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure*

*Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains pending. Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c. Statutory Framework

Turning then to the merits of the Petition, as an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3. The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 2026 WL 1243395, at *1. In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at *5–20. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General: (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization. *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework." *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269. The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[1]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 2026 WL 1243395, at \*8 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing

---

[1] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA. The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.

> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 2026 WL 1243395, at *21.

### d. Petitioner's Detention

Applying the foregoing, Petitioner is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1), but is not "seeking admission" within the meaning of § 1225(b)(2)(A). As discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no basis to conclude here that Petitioner was attempting to secure admission into the country when detained. Additionally, the Response indicates that upon review of the Petition and in light of the Eleventh Circuit's decision on this issue discussed above, "Respondents do not disagree that pursuant to *Hernandez Alvarez* Petitioner is entitled to a bond hearing or individualized custody determination." Resp. at 1. Thus, the Court finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and therefore that Petitioner is detained in violation of the laws of the United States

pursuant to 8 U.S.C. § 2241. Accordingly, Petitioner is entitled to an individualized bond hearing as a detainee under § 1226(a).

While not opposing Petitioner's entitlement to a bond hearing, Respondents nevertheless "suggest, but leave to this Court's sound discretion, that whether this court should order that relief (a bond hearing) at this time is less clear because: (1) *Hernandez Alvarez* is binding precedent upon the immigration courts and the BIA within the geographic region covered by the Eleventh Circuit; . . . (2) as such, Petitioner can avail himself of a bond hearing by first requesting the same; and (3) Respondents represented to [their counsel] that Petitioner has not done so." Resp. at 2 (internal citations omitted). Respondents contend that they agree "with the court's suggestion that the Petitioner is entitled to the relief sought (*viz.*, a bond hearing as dictated by *Hernandez Alvarez*) but note[] that the relief may, and perhaps *should*, be first sought directly from the immigration courts, whether because of prudential exhaustion, limitation of judicial resources or otherwise." *Id.* (emphasis in original).

The Court is unpersuaded that it should not order the relief requested as to a bond hearing, which is unopposed. As discussed above, the Court finds that under the present circumstances of the Policy, exhaustion would be futile. It is also not clear what judicial resources would be conserved here by requiring Petitioner, a *pro se* litigant, to first seek an application for an initial bond redetermination pursuant to 8 C.F.R. § 1003.19 as suggested by Respondents when there is no dispute that he is entitled to a bond hearing. Resp. at 2. Federal regulations make clear that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention," which plainly did not occur here. *See Jennings*, 583 U.S. at 306 (8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). There is also no indication in the Response that there was an "initial custody determination . . . including the setting of a bond," which are the predicate steps contemplated by 8 C.F.R. § 236(d)(1) prior to

a detainee requesting release, rather than an automatic categorization of Petitioner as mandatorily detained pursuant to § 1225(b)(2). Respondents' proposed plan of action would also require staying this case, continuing the Court's involvement in this matter pending the unknowable outcome of Petitioner's request for a bond determination.

Finally, the Response does not explain, and neither do the cases cited therein, what would occur should there be a conflict at the Immigration Court level between a BIA decision, such as *Matter of Yajure Hurtado*, and a Circuit Court decision, such as *Hernandez Alvarez*, when both are binding. *See Matter of Garcia*, 28 I. & N. Dec. 693, 695 (BIA 2023) ("[The BIA], as well as Immigration Judges, are bound to follow the precedent of this Board, the Attorney General, and the circuit court of appeals with jurisdiction over the geographic region where as case occurs." (citation omitted)); *Matter of U. Singh*, 25 I. & N. Dec. 670, 672 (BIA 2012) ("We apply the law of the circuit in cases arising in that jurisdiction, but we are not bound by a decision of a court of appeals in a different circuit." (citation omitted)); *Matter of Anselmo*, 20 I. & N. Dec. 25, 32 (BIA 1989) (finding Ninth Circuit decisions "must be followed" in cases arising within that jurisdiction). Upon the record and arguments presented in this case, the Court cannot conclude that ordering a bond hearing as to Petitioner would be futile, unnecessary, or otherwise an improvident exercise of judicial resources.

### e. Due Process Violation

The Court will not reach the merits of Petitioner's due process claims because the statutory relief is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondents fail to provide Petitioner with a bond hearing as ordered herein, or should such a hearing result in his continued detention and he continue to not be removed in the near future, Petitioner may renew his due process claims.

**IV.     CONCLUSION**

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is GRANTED IN PART.  <u>Within seven (7) days of this Order</u>, Respondents shall provide Petitioner with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner.  Such bond may not be denied on the basis that Petitioner is detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this __22nd__ day of June, 2026.


_K. M. Moore_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record